UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:06CV-54-R

ANTHONY STARGLE                                                                    PLAINTIFF

v.

PAMIDA, INC. and                                                                    DEFENDANTS
SHOPKO STORES, INC.

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docket #9). Plaintiff filed a response (Docket #18) to which Defendants have replied (Docket #19). This matter is now ripe for adjudication. For the reasons that follow, Defendants' Motion for Summary Judgement is GRANTED.

**BACKGROUND**

Plaintiff was employed as an Operations Team Leader ("OTL") in the Liberty, Kentucky Pamida store. Pamida is a retail store selling all types of goods, including clothing, food, and items for the home. The Pamida store in Liberty also has a pharmacy. Prior to starting in the Liberty store, Plaintiff trained with another OTL for two weeks at the Louisa, Kentucky Pamida store in order to learn his job.

On June 28, 2005, Plaintiff observed fellow employees buying out-dated over-the-counter medicines from the store, which, according to him, was in violation of Pamida policy. He also believed that these employees were allowed to buy quantities of the medicine that exceeded the legal limits. When he learned that his direct supervisor, Store Team Leader ("STL") Rick Kimbel, had allegedly approved the transaction, Plaintiff told Kimbel that he would be talking to someone about

the events.  Kimbel responded that "the less corporate knows the better" and that he "shouldn't rock the boat."

On August 5, 2005, Plaintiff sent a letter to Pamida's Employee Relations Department.  In the letter Plaintiff indicates that he is "not getting any satisfaction from [his] STL . .  on several issues."  Plaintiff states that he is involved in an ongoing child custody dispute and that the Judge has ordered him to have his child every Saturday from ten in the morning until eight at night, however, Kimbel will not allow him to take off, on a temporary basis, the two Saturdays per month that he is required to work.  Plaintiff also complained of additional scheduling problems.  Additional issues raised in the letter are: Kimbel's lack of work ethic and abusive nature toward employees; deceptive things he was told to do; the sale of outdated over-the-counter medicine to fellow employees; resale of Pamida items in garage sale; Plaintiff's last performance review; a sexual harassment claim he raised in 2004 concerning Dana Bryant; the store not being run as he was shown in training; and employees not clocking in and out for lunch, and not taking break periods.

Upon receipt of Plaintiff's letter, the Employee Relations Department in Green Bay, Wisconsin, acting through employee Annette Krutz, began to investigate the alleged incidents of wrongdoing set forth in Plaintiff's letter.  Krutz coordinated an on-site investigation at the Liberty store to be conducted by Loss Prevention Specialist Perry Snook and District Team Leader Kim Walsh.  Two other employees came forward with complaints concerning Kimbel.[1]  On August 24, 2005, Walsh and Snook met with store employees, including Plaintiff, and interviewed them about the various issues alleged.  As a result of this investigation, Kimbel received a serious warning on August 25, 2005.  A few weeks later, Kimbel's employment was terminated.

---

[1]  Neither of these employees was terminated.

On August 16, 2005, a fellow employee of Plaintiff's, Dana Bryant, told Mike Cushing, her supervisor, that Plaintiff was calling her at home and at work and sending her threatening text messages, including one which threatened that he would see her fired if she did not talk to him.[2] Krutz, Snook, and Walsh investigated. Upon completion of this investigation, Krutz and Walsh made the decision to terminate Plaintiff's employment for violation of Pamida's anti-harassment policy and for dishonesty in connection with the investigation. Plaintiff maintains that he did not harass Bryant.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact

---

[2] Specifically these text messages stated:

"We talking at 6 so forget your plans"
"Better come talk to ME B4 WE REGRET THIS"
"you show up for work ill see to it that you get fired today"

could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

### I.    WRONGFUL TERMINATION

An at-will employee has a cause of action for wrongful discharge when the discharge is contrary to fundamental and well-defined public policy as evidenced by constitutional or statutory provision. *Boykins v. Hous. Auth. of Louisville*, 842 S.W.2d 527, 529 (Ky. 1992). Additionally there exist two situations where the discharge of an employee violates fundamental public policy even absent explicit legislative statements prohibiting discharge: "first, where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment. Second, when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Id.* at 530 (internal citations omitted). If the Plaintiff's discharge does not meet these criteria "it is not a basis for a wrongful discharge claim, no matter how 'morally indefensible' the employer's reasons." *Stewart v. Pantry, Inc.*, 715 F. Supp.

1361, 1364 (W.D. Ky. 1988) (citing *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1984)).  There must be an employment-related nexus between the policy that has been allegedly violated by the plaintiff's discharge and the discharge itself. *Boykins*, 842 S.W.2d at 530.  The employee has the burden of showing that one of the exceptions to the terminable at-will doctrine applies. *Bennett v. Jones*, 851 S.W.2d 494, 495 (Ky. Ct. App. 1993).

Plaintiff points to no explicit legislative statement prohibiting his discharge under the circumstances.  Therefore, this Court will examine whether Plaintiff's discharge falls under either of the two Kentucky "public policy" exceptions; namely, whether the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment, or whether the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment.

Plaintiff testified that no one at Pamida asked him to do anything illegal.  Therefore, Plaintiff can not proceed under the first exception to employment at will. *See Goins v. Interstate Blood Bank, Inc.*, No. 4:03CV-040-M, 2005 U.S. Dist. LEXIS 14163, at *16-17 (W.D. Ky. July 12, 2005) ("[T]he employee must allege that his employer asked him to do something unlawful and discharged him for refusing, not merely that there was an unspoken expectation of silence regarding the employer's purported contravention of a law." (quoting *Szaller v. Am. Nat'l Red Cross*, 293 F.3d 148, 152 (4th Cir. 2002))).

Plaintiff fails to point to any legislative enactment which would support his right to report the issues raised in the letter.  As the burden is on Plaintiff to demonstrate that an exception to the terminable at-will doctrine exists, his failure to point to any legislative enactment dooms his claim

under this exception. *See Bennett*, 8511 S.W.2d at 495; *see also Stump v. Wal-Mart Stores*, 942 F. Supp. 347, 349 (E.D. Ky. 1996).

Thus, this Court finds that Plaintiff has failed to show that any exception to the terminable at-will doctrine applies and, therefore, Plaintiff's wrongful termination claim fails as a matter of law.

## II.    DEFAMATION

Plaintiff cites several instances where he claims that he was defamed. The first instance was Pamida's internal written documentation of his termination. Plaintiff claims everything in it is false because he did not harass anyone. Plaintiff admitted that no one told him that they had seen the documentation, only that it seemed like a fellow employee told him that the pharmacist had it back in the pharmacy one day. Plaintiff also believes he was slandered by employees who were interviewed as part of the internal August investigations. Plaintiff also indicates that Shift Team Leader Elaine Durham told her husband that Plaintiff had been fired because he was lazy, wouldn't work, and stood around all the time. According to Plaintiff, Durham's husband then repeated this statement to Plaintiff's brother and neighbor. Plaintiff also claims that he was defamed by a fellow employee's minor son while the minor was in the store. The minor does not work for Defendants.

The elements of defamation in Kentucky are: (1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation. *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981). Kentucky courts have held that language is defamatory for purposes of the first element of this test "if it tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or (3) injure him in his business or occupation." *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981).

6

Defendants claim that certain of these alleged defamatory statements were made within an employment relationship, and thus entitled to qualified privilege under Kentucky defamation law. In *Columbia Sussex Corp., Inc. v. Hay*, the Kentucky Court of Appeals found that privilege existed to cover statements made in the context of an investigation of a hotel robbery in which the plaintiff was suspected to have been complicit. *Columbia Sussex*, 627 S.W.2d at 275.  In so holding, the court said:

> A robbery had occurred at [the employers'] place of business, which robbery carried certain indicia of having been an inside job. It was not, therefore, unexpected for [the employers] to have engaged in their own investigation, bounded by the standard of reasonableness.  The privilege which thus existed was not an absolute one, such as judicial immunity, but rather one qualified by the proviso that it not be abused, *i.e.* that whatever defamation may have been spoken related solely to the investigation, that the remarks not be over-publicized, and that they not be published with malice.

*Id.* (citing *Baker v. Clark*, 218 S.W. 280 (Ky. 1920)).  The *Columbia Sussex* court also noted that "[t]he determination of the existence of privilege is a matter of law."  *Id.* at 276 (citing *Caslin v. Gen. Elec. Co.*, 608 S.W.2d 69 (Ky. Ct. App. 1980)).  The Court finds that the internal written documentation of Plaintiff's termination is entitled to the qualified privilege under Kentucky law as are the interviews given by fellow employees as part of the August investigations.  There is no indication that these statements were published with malice.  *See id.* at 275.

Plaintiff also seeks to hold Defendants liable for statements made by Durham and her husband as well as a fellow employee's minor son.  In certain situations, an employer may be held vicariously liable for the acts of its employee; a doctrine under which liability is predicated upon the imputation to the employer of a tortious act of the employee.  *Disabled Am. Veterans, Dep't of Ky., Inc. v. Crabb*, 182 S.W.3d 541, 555 (Ky. Ct. App. 2005).  "Generally however, an employer is not vicariously liable for an intentional tort of an employee not actuated by a purpose to serve the

employer." *Id.* (internal citation omitted).  There is no evidence in the record that Defendants authorized these individuals to make these comments about Plaintiff.  There is also no evidence that Durham made her statement within the course and scope of her employment.  The mere fact that some of these statements were made at the store or by Defendants' employee is insufficient to hold Defendants liable for these statements.  *See id.*  Therefore, this Court finds that Defendants may not be held liable for these statements.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.